Argued and submitted September 15, 1986, affirmed as modified March 11, reconsideration denied May 8, petition for review denied June 2, 1987 (303 Or 483)

In the Matter of the Compensation of
Mary G. Mischke, Claimant.

D MAINTENANCE COMPANY et al,
*Petitioners,*

*v.*

MISCHKE et al,
*Respondents.*

(WCB Nos. 84-01332, 84-02928; CA A37383)

733 P2d 903

Jerry K. Brown, McMinnville, argued the cause for petitioners. With him on the brief was Cummins, Cummins, Brown & Goodman, P.C., McMinnville.

J. Michael Casey, Portland, argued the cause and filed the brief for respondent Mary G. Mischke.

John E. Snarskis, Portland, argued the cause and filed the brief for respondent Industrial Indemnity.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

This workers' compensation case involves the responsibility of two insurance companies that provided workers' compensation coverage for employer. Claimant experienced an industrial injury on March 31, 1983. She filed a claim on April 14, stating that she was suffering right arm strain with numbness in her hand and last two fingers. Employer, then insured by Industrial Indemnity (Industrial), accepted the claim on May 2, 1983. In June of that year, employer moved its workers' compensation coverage to American Fire & Casualty (American), which agreed to provide coverage as of March 28, 1983, which was before claimant's injury.

The Workers' Compensation Department wrote to Industrial on August 2, 1983, advising it that its period of responsibility had ended on March 27, 1983. Industrial, however, continued paying benefits to claimant until January, 1984, when its claims representatives noticed that its coverage had supposedly ended four days before the injury. On January 12, Industrial sent claimant a denial notice and forwarded her file to American, along with a demand for reimbursement of claim expenses. Industrial stopped paying benefits as of that date.

On February 6, 1984, claimant requested the designation of a paying agent pursuant to ORS 656.307(1)(b). Industrial responded that it did not provide coverage and that, therefore, a paying agent was not warranted. American denied responsibility, asserting that Industrial could not issue a denial of responsibility for an accepted claim. Then Industrial reversed its position and agreed to a paying agent designation. American responded that it would not concede compensability until it had completed its investigation. A paying agent order never issued.

The referee determined that, under the rule in *Bauman v. SAIF,* 295 Or 788, 670 P2d 1027 (1983), Industrial could not deny its responsibility for the accepted claim. The referee awarded claimant attorney fees for prevailing against Industrial on the denied claim and a 25 percent penalty on all temporary disability compensation due from January 4, 1984, to the date of the order and additional attorney fees for securing penalties. The referee awarded a 25 percent penalty

against American for its unreasonable delay and refusal to provide "interim compensation" from January 12 through February 17, 1984, and attorney fees for securing that penalty and for American's "unreasonable denial of compensability" in refusing to agree to a paying agent order.

The Board reversed on the issue of responsibility on the authority of *Retchless v. Laurelhurst Thriftway,* 72 Or App 729, 696 P2d 1181, *rev den* 299 Or 251 (1985), and concluded that, because American was liable in fact, given the effective date in its contract, Industrial was relieved of responsibility for claimant's compensation. The Board affirmed penalties and attorney fees against both insurers but increased the total attorney fee award against American to $1450 from the referee's total award of $800.

Only American seeks review of the Board's order.[1] In its first assignment of error, it argues that it cannot be responsible for claimant's compensation, because (1) Industrial could not issue a back-up denial, (2) Industrial had waived its right to "avoid responsibility" or (3) American's contract only extended retroactive coverage to claims not yet accepted when the contract was signed.

■ The general rule of *Bauman v. SAIF, supra,* is that an insurer, after accepting a claim, cannot deny it. That bar applies equally to denials of responsibility and to denials of compensability. *Jeld-Wen, Inc. v. McGehee,* 72 Or App 12, 15, 695 P2d 92, *rev den* 299 Or 203 (1985). In *Retchless v. Laurelhurst Thriftway, supra,* 72 Or App at 731, we interpreted those cases to mean that the first employer or insurer must continue to pay compensation *unless and until* someone else is determined to be responsible.[2]

Claimant gave notice of her injury to employer as required by ORS 656.265. Employer then had the burden to notify the insurance carrier of the claim. ORS 656.262(3).

---

[1] Industrial acknowledges that claimant should not have been left without compensation; it has not contested penalties and attorney fees awarded against it. *See Fred Shearer & Sons v. Stern,* 77 Or App 607, 713 P2d 1078 (1986).

[2] American submits that the rule in *Retchless v. Laurelhurst Thriftway, supra,* is an aberration which should be overruled in order to remove confusion. The confusion suffered by American more likely stems from its entry into a retroactive agreement than from the rule in *Retchless,* which others have found capable of application. *Fred Shearer & Sons v. Stern, supra,* n 1.

Industrial was the carrier at the time and was properly notified. It duly accepted the claim and commenced payment of compensation. At that point, compensability and responsibility were resolved to the extent of the acceptance, and the *Bauman* and *Retchless* principles attached to protect claimant from vacillation by her employer or its insurance carrier.

■　　The question is whether responsibility shifted when employer contracted with American to provide retroactive coverage. American argues that it did not intend to pick up existing claims that had already been filed in the retroactive period; rather it intended simply to process new claims based on occurrences in that period but not filed before the execution of its contract. American's unexpressed intent, however, does not govern the extent of its coverage. The contract does, and it provides that American would bear all of employer's compensation liability arising during the contract period. Furthermore, ORS 656.419(1) provides:

> "A guaranty contract issued by an insurer *shall* provide that the insurer agrees to *assume,* without monetary limit, the *liability* of the employer, *arising during the period the guaranty contract is in effect* * * *." (Emphasis supplied.)

Both by the terms of its contract and under the statute, American has responsibility for all workers' compensation liability that arose after the effective date of its insurance, whenever asserted.

■　　American also argues that Industrial waived any right it had to avoid responsibility, because it did not file its notice of termination with the Department until July, 1983, and in that notice it stated that it had cancelled coverage as of April 15, 1983. Industrial's responsibility ended, because American and employer entered into an agreement which terminated Industrial's liability. ORS 656.423(3) provides that an employer may cancel coverage by providing other coverage and that cancellation is "effective immediately upon the effective date of the other coverage." Industrial could not "waive" employer's cancellation of its coverage.[3] Under American's contract, it accepted responsibility for all liability which arose after March 27, 1983.

---

[3] American claims that it was prejudiced by Industrial's actions. Any prejudice was self-inflicted. It has to accept the compensability of the claim because of its choice to provide retroactive coverage.

■ In another assignment of error, American argues that, because claimant did not assert entitlement to penalties and attorney fees at the outset of the hearing, the referee and Board did not have authority to award them. To support that assertion, it cites *EBI Companies v. Thomas,* 66 Or App 105, 672 P2d 1241 (1983), in which we held that an issue designated as "failure to meet requirements of ORS 656.307" did not raise the issue of whether penalties or attorney fees should be allowed for a late denial under ORS 656.262(9).[4] In her request for hearing, claimant here raised, *inter alia,* the issues of compensability, responsibility under ORS 656.307 and penalties and attorney fees. Unlike the request for hearing in *Thomas,* the request in this case specifically raised penalty and attorney fees issues. The Board's awards, therefore, were within the bounds of its authority.

American also assigns error to the Board's ruling that it "should have paid temporary total disability benefits as interim compensation." It argues that no interim compensation was due, either because it supposedly issued a denial within 14 days of notice of the claim to it or because an award of interim compensation would constitute a double recovery for claimant. It also argues that, because no compensation was due, no penalties could be awarded. ORS 656.262(10).

■ Under ORS 656.262(2) and (4), interim compensation is due within 14 days after an *employer* has notice or knowledge of the claim, unless the right to compensation is denied within that period. *See Bono v. SAIF,* 298 Or 405, 692 P2d 606 (1984). The interim period between notice to employer and acceptance of the claim began when claimant notified employer of her injury in April, 1983, and lasted until Industrial accepted her claim. Once Industrial had accepted her claim, further time loss was a matter of her temporary disability. When American agreed to assume all of employer's workers' compensation liabilities, it also assumed claimant's accepted claim. American, therefore, could not have owed *interim* compensation from January 12, 1984, to February 17, 1984. Therefore, the Board's award of a 25 percent penalty could not be based on failure to pay interim compensation.

---

[4] That provision is now ORS 656.262(10).

What American did owe was prompt payment of temporary total disability benefits. Its refusal to begin payment when Industrial notified it of its obligation on January 12 and its effort to deny responsibility constituted a refusal to pay compensation. Assessing a penalty and attorney fees for that was technically appropriate, ORS 656.262(10), even if the Board mischaracterized the basis for its action. However, Industrial has been assessed a 25 percent penalty based on exactly the same unpaid benefits. To uphold the penalty against American would result in claimant's receiving a 50 percent penalty. That part of the award must be stricken, given that Industrial has not sought review.

American also contests the two attorney fee awards granted by the referee, under ORS 656.382(1), for claimant's attorney's efforts in securing a penalty for failure to pay compensation and for the efforts to obtain a paying agent order. The Board affirmed the awards but increased the total award to $1450.[5]

■ ■ American first argues that the fees based on the penalty award were erroneous, because no compensation was due. However, we have already concluded that it owed claimant TTD.[6] It further argues that, because there is no specific statutory authority for awarding attorney fees for resisting the issuance of a paying agent order, that award was erroneous. *EBI Companies v. Thomas, supra.* The award granted by the Board, however, was based on ORS 656.382(1), which states in pertinent part:

> "If an insurer * * * unreasonably resists the payment of compensation, the * * * insurer shall pay to the claimant * * * a reasonable attorney fee * * *."

American's refusal to accede to the issuance of an order resulted in claimant's not receiving compensation for an already accepted claim. Once American had assumed all workers' compensation liabilities of her employer, it had no right to

---

[5] The Board discussed the referee's award for resistance to a paying agent order as a penalty. It did not, however, award a penalty but affirmed and increased the attorney fees award.

[6] Attorney fees for resisting payment can be awarded, whether or not there is a penalty or compensation due under ORS 656.262(10). *See, e.g., Miller v. SAIF,* 78 Or App 158, 162, 714 P2d 1105 (1986). In this instance we have stricken the penalty, but that has no necessary effect on the attorney fees issue.

question her entitlement to compensation. American's resistance to paying compensation and to the appointment of a paying agent in the circumstances of this case falls within ORS 656.382(1) as unreasonable resistance to payment of compensation.

■ The Board was also correct in awarding one total fee, rather than two separate fees, as the referee did. Fees are awarded on the basis of the efforts of the attorney, *Saiville v. EBI Companies,* 81 Or App 469, 472, 726 P2d 394, *rev den* 302 Or 461 (1986), and all the fees generated by claimant's attorney in this case were for efforts to overcome American's resistance. Therefore, attorney fees assessed against American for claimant's attorney's efforts throughout the hearing process and for the attempt to get a paying agent order were proper. The Board's award of $1450 was reasonable.

Order modified by striking penalty based on "interim compensation"; affirmed as modified.